**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


ROBERT L. DAVIS,

      Petitioner,

v.                                   Case No. 8:03-CV-1807-T-27TBM

JAMES McDONOUGH,[1]

      Respondent.

_____/

## O R D E R

Petitioner, a State of Florida inmate, initiated this action *pro se* by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Petitioner is challenging convictions entered in the Thirteenth Judicial Circuit Court, Hillsborough County, Florida. Respondent filed a response to the petition (Dkt. 5), and Petitioner has filed a reply thereto (Dkt. 8). The matter is now before the Court for consideration of the merits of the petition. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a).

### Background

Twice on February 16, 2000, Petitioner presented and cashed a check drawn on the Lutz Auto Maintenance Barn ("LAMB") account maintained at the Sun Trust Bank in the amount of $275.00 (Dkt. 5, Ex. 1 at R. 7). Petitioner was charged by Information with

---

[1]James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

uttering a forged instrument (2 counts), in violation of Fla. Stat. § 831.02 (2000), and petit theft (2 counts), in violation of Fla. Stat. § 812.04(2)(d) (2000) (Dkt. 5, Ex. 1 at R. 8-14).

The trial court appointed the public defender to represent Petitioner (Dkt. 5, Ex. 1 at R. 15). The case was assigned to Assistant Public Defender ("APD") Trager on April 18, 2000 (Dkt. 5, Ex. 1 at R. 15). On August 8, 2000, the State filed a Notice of Intent to Rely on *Williams* Rule Evidence[2] (Dkt. 5, Ex. 1 at R. 16). Petitioner filed a pro se Motion in Limine in opposition to the *Williams* Rule evidence, which was denied (Dkt. 5, Ex. 1 at R. 18). Prior to trial, Petitioner invoked his right to self-representation. Following a *Faretta* hearing[3] held on August 21, 2000, Petitioner was allowed to proceed *pro se* with APD Trager serving as standby counsel[4] (Dkt. 5, Ex. 1, Vol. 2 at Tr. 4-6).

When the case was called for trial, APD Trager, at Petitioner's request, communicated a plea solicitation to the State, which were rejected (Dkt. 5, Ex. 1, Vol. 2 at Tr. 9-15). In his opening statement, Petitioner conceded that much of the State's case was true, informing the jury that when he cashed the checks, he did not know they were stolen (Dkt. 5, Ex. 1, Vol. 2 at Tr. 69). Petitioner was found guilty as charged and sentenced to time served on the two petit theft charges and concurrent five year terms of imprisonment, with credit for time served in the county jail, on the two uttering charges (Dkt. 5, Ex. 1 at R. 53-54) (Dkt. 5, Ex. 003 at 1-3).

---

[2]The *Williams* Rule, codified in Fla. Stat. § 90.404, is substantially similar to Federal Rule of Evidence 404. Under Fla. Stat. § 90.404(2), evidence of other crimes, wrongs, or acts is admissible when relevant as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity. *See Williams v. State*, 110 So.2d 654, 662 (Fla.), *cert. denied*, 361 U.S. 874 (1959) (holding that evidence of other crimes is admissible and relevant if it tends to show a common scheme or plan).

[3]*See Faretta v. California*, 422 U.S. 806 (1975) (A defendant has a constitutional right to defend himself if his waiver of right to counsel is knowing and intelligent).

[4]*See McKaskle v. Wiggins*, 465 U.S. 168 (1984) (There is no constitutional deprivation by appointment of standby counsel even over the objection of the defendant) (citing *Faretta*, 422 U.S. at 834).

Petitioner raised seven issues on direct appeal:

1. [Petitioner's] constitutional rights to due process was violated when the trial court allowed the bailiff to be [a] testifying state witness and coordinate the jury at trial;

2. The trial court erred by allowing the state to strike the only black juror on being accused of crime absent evidence supporting accusation;

3. Trial court erred and denied [Petitioner] a fair trail when it allowed the State to introduce *Williams* rule evidence at trial;

4. The trial court abused its discretion when it denied [Petitioner] a continuance to subpoena witnesses and prepare for trial;

5. The trial court erred and prejudiced [Petitioner's] trial when it did not properly swear in the jury and state's witnesses;

6. The trial court prejudiced [Petitioner's] trial when it allowed state witness statements of identification to stand in light of being tainted; and

7. The trial court['s] bias prejudiced [Petitioner's] defense and denied [Petitioner's] constitutional right to a fair and impartial trial.

(Dkt. 5, Ex. 003 at i-ii). The state appellate court affirmed Petitioner's conviction per curiam on June 14, 2002 (Dkt. 5, Ex. 004). *See Davis v. State*, 827 So.2d 988 (Fla. 2d DCA 2002) (table decision). Petitioner's motion for rehearing was denied on August 21, 2002, *see* Dkt. 5, Ex. 006, and the mandate issued on September 19, 2002, *see* Dkt. 5, Ex. 007.

Petitioner filed a state application for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 raising the following grounds for relief: (1) trial counsel was ineffective assistance when he failed to severance [sic] one of the felony charges; (2) trial counsel was ineffective assistance when he refused to call or investigate available witnesses; (3) trial counsel was ineffective assistance when he failed to move to exclude entry of the *Williams* rule evidence; (4) [trial] counsel and [the trial court] judge denied the [Petitioner] his right to be present at all proceedings; (5) [the] trial court denied the [Petitioner] constitutional "access to the courts" when it declined to notify the county jail that [Petitioner] was *pro se*; (6) [the] trial court denied

3

the [Petitioner] his constitutional rights to call witnesses and prepare for trial; and (7) [the] trial court denied the [Petitioner] to properly voir dire the jury panel when it failed to properly swear in the jury panel (Dkt. 5, Ex. 010). The trial court's January 14, 2003 decision denying Petitioner's Rule 3.850 motion was affirmed on appeal with the mandate issuing on June 25, 2003 (Dkt. 5, Ex. 013). *See Davis v. State*, 851 So.2d 158 (Fla. 2d DCA 2003) (table decision).

Petitioner filed an application for federal habeas relief on August 21, 2003, raising six grounds for relief, discussed below. On May 6, 2006, Petitioner filed a motion to supplement his petition by adding three new grounds for relief (Dkt. 16). Having reviewed the record, the parties' arguments, applicable statutes, and controlling case law, the Court concludes that Petitioner has not demonstrated that he is entitled to relief under §2254.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into law on April 24, 1996, amended the statutes governing federal habeas relief for state prisoners. Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof.  Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims.  *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001).

Under 28 U.S.C. § 2254(d) and (e), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001). Similarly, the state courts' resolutions of issues of law – including constitutional issues – must be accepted unless they are found to be "contrary to" clearly established precedent of the

4

Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough "that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. See also Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Moreover, in order for a court to consider claims brought in a federal habeas petition they must first be fully exhausted in state court. 28 U.S.C. § 2254(b)(1); *Kelley v. Sec'y for Dep't Of Corrs.*, 377 F.3d 1317, 1343 (11th Cir. 2004). In order to be exhausted, a federal claim must be fairly presented to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). A federal question raised in a federal habeas petition is not fairly presented to the state courts if the issue is only raised as a state law claim before the state courts. *Anderson v. Harless*, 459 U.S. 4, 6-8 (1982). Thus, federal claims that have not been fairly presented – that is, where the petitioner presents his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation," *Kelley*, 377 F.3d at 1344-45 (citing *Picard*, 404 U.S. at 277) – are procedurally barred and cannot be adjudicated at the habeas stage.

### Discussion

Petitioner raised the following grounds for relief in his petition:

1. Trial counsel's refusal  to do anything denied Petitioner effective assistance of counsel.

2. Trial court abused his discretion when it denied  the Petitioner a continuance.

3. The trial court erred by denying Petitioner's in limine motion  to exclude *Williams* Rule evidence denying him a  fair trial.

4. The trial court denied Petitioner an impartial tribunal.

5

5.  [The] trial court denied Petitioner an honest jury panel by not properly swearing them in.

6.  The trial court denied Petitioner constitutional [right of] access to the courts.

(Dkt. 5 at 5-6A).  In the motion to supplement, Petitioner asserted the following three new claims:

7.  Black juror racially stricken in violation of Petitioner's 6th and 14th Amendment rights to the United States Constitution. . . .where the state prosecutor excluded the only black member of the jury panel selection by accusing him of being accused of a crime without evidence in support;

8.  Waiver of counsel was not voluntarily waived; and

9.  Vindictive sentence rendered in violation of Petitioner's 5th and 6th Amendment to trial without retribution.

Dkt. 16 at 2.

## Procedural Default

State prisoners whose convictions became final after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), have one year from the latest of any of four events to file a § 2254 petition: (1) the date on which the conviction became final; (2) the date on which any state-imposed impediment to filing the petition is removed; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

6

Petitioner's convictions became final on direct appeal on September 12, 2002, when the time for filing a petition for certiorari review expired. *See* Sup. Ct. R. 13.1; *Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002); *Davis v. State*, 827 So.2d 988 (Fla. 2d DCA 2002) (table decision). Thus, absent tolling by a "properly filed" application for state post-conviction relief, Petitioner had until September 12, 2003, to file a petition for federal habeas relief.

The limitations period was tolled on November 13, 2002, when Petitioner filed a state application for post-conviction relief pursuant to Fla. R. Crim. P. 3.850. The state appellate court issued its mandate affirming the trial court's denial of Petitioner's Rule 3.850 motion on June 25, 2003. The limitations period recommenced to run with 303 days remaining unexpired (365 days - 62 days = 303 days). Absent tolling, Petitioner's federal habeas petition was due to be filed on or before April 24, 2004.

Petitioner filed a timely request for federal habeas relief on August 21, 2003 (Dkt. 1). The filing of the petition did not, however, have any tolling effect on the one-year limitations period for claims not asserted therein. *See Duncan v. Walker*, 533 U.S. 167, 172 (2001) (finding that "a properly filed federal habeas petition does not toll the limitation period."). The limitations period for any claims not asserted in Petitioner's original petition expired on April 24, 2004. Petitioner delayed more than two years after the expiration of the limitations period before filing the motion to supplement his claims on May 17, 2006. Once AEDPA's limitations period expires, it cannot be reinitiated. *See Tinker v. Moore*, 255 F.3d 1331, 1333-34 (11th Cir. 2001), *cert. denied*, 534 U.S. 1144 (2002).

Petitioner has not shown that a state created impediment prevented him from filing these claims or that he could not have discovered the factual predicate of the claims prior to May 6, 2006 when he filed the motion to supplement. *See* 28 U.S.C. § 2244(d)(1)(B) &

(D). Thus, Grounds Seven, Eight, and Nine are time-barred under 28 U.S.C. § 2244(d)'s one-year limitations provision unless Petitioner demonstrates that he is entitled to equitable tolling of the limitations period. Section 2244 "permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence.' " *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000) (quoting *Sandvik v. United States,* 177 F.3d 1269, 1271 (11th Cir. 1999) (*per curiam*)). Petitioner bears the burden of showing that equitable tolling is warranted. *Drew v. Dep't. of Corrs.,* 297 F.3d 1278, 1286 (11th Cir. 2002). The "extraordinary circumstances" must relate to the untimeliness of the filing rather than the underlying conviction.

Petitioner has failed to allege, much less establish, that extraordinary circumstances that were both beyond his control and unavoidable with diligence prevented him from presenting these claims before the limitations period expired,[5] which are essential elements for the imposition of equitable tolling.

Because the AEDPA's one-year limitation period has expired, Petitioner cannot supplement his petition to add additional claims unless the claims relate back to a claim raised in the timely filed petition. To hold otherwise would allow a prisoner to circumvent the

---

[5]Petitioner acknowledges that Grounds Seven, Eight, and Nine are procedurally barred because they were not exhausted in state court. Petitioner urges the Court to allow him to proceed on these claims despite the procedural default in state court because the rights he asserts are "not an independant [sic] state law right, but a right originating from the United States Constitution, and is therefore not bared [sic] from federal habeas corpus judictional [sic] review" (Dkt. 16 at 2). *See also id* at 3; 4. According to Petitioner, "it will be a manifested [sic] injustice if the court declined to protect Petitioner's constitutional rights to trial without retribution." *Id.* at 4. Petitioner further argues that Ground I is "exempt . . . from default or a procedural bar because [he] was denied appointment of counsel for sentencing." *Id.* at 5. *But see* Dkt. 2, Ex. 5 at R. 399 (appointing standby counsel to assist Petitioner). Finally, Petitioner argues that his limited access to a law library during his criminal proceedings, coupled with his ignorance of "the laws and procedures" governing the trial excuse his default. *Id.* at 4. Petitioner's proffers of cause for his procedural default on these claims do not warrant finding that he is entitled to the benefit of equitable tolling of the limitations period. *See Helton v. Sec. for the Dep't of Corrs.,* 259 F.3d 1310, 1314-15 (11th Cir. 2001) (holding that "[t]he 'extraordinary circumstances' standard applied in this circuit focuses on the circumstances surrounding the late filing of the habeas petition, rather than the circumstances surrounding the underlying conviction.").

statute of limitations using Fed. R. Civ. P 15(c) as a method of extending AEDPA's limitations period. *See Davenport v. United States*, 217 F.3d 1341, 1342-46 (11ᵗʰ Cir. 2000), *cert. denied*, 532 U.S. 907 (2001) (finding that to relate back under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings). Having reviewed the claims set forth in the petition and the arguments made in support thereof in the memorandum of law, the Court concludes that Grounds Seven, Eight, and Nine do not meet the criteria for relation back under Fed. R. Civ. P. 15(c). Petitioner was cautioned before he filed his petition that failure to present all of his grounds for relief therein may result in his being "barred from presenting them at a later date" (Dkt. 1 at 4).

While the Eleventh Circuit has yet to address this issue in the context of AEDPA's limitation period, generally, a procedural default may be excused if the petitioner can show failure to address the claim on the merits would lead to a fundamental miscarriage of justice, often referred to as the "actual innocence" exception. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Assuming, without deciding, that an "actual innocence" exception to the limitations period exists, the Court finds that Petitioner fails to state a colorable claim of actual innocence.

A petitioner in a collateral proceeding who wishes to establish his actual innocence to avoid a procedural bar to consideration of the merits of his underlying claim must demonstrate that "a *constitutional* violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327 (1995) (emphasis added). This gateway applies only if the petitioner can demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt."

9

*House v. Bell,* ___ U.S. ___, 126 S.Ct. 2064, 2076-77 (2006); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. at 327-28). In this context, Petitioner must show constitutional error coupled with newly discovered evidence that was not presented at trial which would establish factual innocence rather than mere legal insufficiency. *Id*; *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). *See also Schlup v. Delo*, 513 U.S. at 324. Petitioner does not assert that he has "new" reliable evidence of factual innocence, and there is nothing in the record that suggests a miscarriage of justice will occur if the Court does not reach the merits of these claims. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). The Court concludes, therefore, that Grounds Seven, Eight, and Nine are time barred under § 2244(d).

Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996). The merits of Grounds Seven, Eight, and Nine will not therefore be addressed. *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

**Merits**

Respondent acknowledges that the remaining claims Petitioner raises are timely but argues that the petition should be denied because Petitioner has failed to make the showing necessary for relief under 28 U.S.C. §§ 2254(d)-(e) (Dkt. 5 at 1).

**Ground One**

In his first claim for relief, Petitioner asserts that he was denied the right to effective assistance of counsel. Specifically, Petitioner asserts that APD Trager was ineffective in failing to move to sever the felony charges; refusing to call or investigate available witnesses; failing to move to exclude the *Williams* rule evidence; and denying Petitioner the right to be

present at all proceedings. Petitioner raised these claims in his Rule 3.850 motion. In

rejecting the claims, the trial court found as follows:

> Grounds 1, 2, 3, and 4 of Defendant's Motion can be addressed simultaneously as each of these grounds allege various instances of ineffective assistance of counsel. However, a defendant who elects to represent himself at trial thereafter cannot complain the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Bundy v. State*, 497 So.2d 1202, 1210 (Fla. 1986), citing *Faretta v. California*, 442 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 2541, n. 46, 45 L.Ed.2d 562 (1975). In the instant case, Defendant proceeded pro-se thereby choosing to represent himself at trial. (*See* excerpts from trial transcript, attached). As such, no relief is warranted on these grounds.

Resp. Ex. 011/p. 2.

Citing *United States v. Roggio*,  863 F.2d 41, 43 (11th Cir.), *cert. denied*, 490 U.S.

1109 (1989), Respondent contends that the state trial court's adjudication of Petitioner's

claims has not resulted in a decision that is contrary to, or involves an unreasonable

application of, clearly established Federal law as determined by the Supreme Court of the

United States. *See also State v. Capetta*, 216 So.2d 749, 750 (Fla. 1968), *cert. denied*, 394

U.S. 1008 (1969). Where, as here, the defendant decides to remove his counsel during the

trial even though he knew that the court would not appoint a replacement counsel, his

decision is considered a voluntary waiver of his right to have counsel represent him. *Roggio*,

863 F.2d at 43.

> At the outset, we note that the appellant insisted on representing himself during his trial despite repeated admonitions by the trial judge about the consequences of such representation. The appellant clearly had a right to represent himself, but in exercising that right he cannot now complain that he received ineffective assistance of counsel at trial. "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' " *Faretta v. California*, 422 U.S. 806, 834 n.46, 95 S.Ct. 2525, 2540-41 n.46, 45 L.Ed.2d 562 (1975). Thus, appellant's claim of ineffective assistance of counsel can only concern his attorney's pretrial preparation of the case which might have prejudiced Roggio's right to a fair trial.

*Id.* Petitioner fails to cite any decision by the United States Supreme Court holding to the contrary.

In the instant case, however, each of Petitioner's assertions of ineffective assistance of counsel relates to pretrial preparation. To establish a prima facie claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness under § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d at 835-37. State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, see *Williams v. Taylor*, 529 U.S. at 412-413, a burden that Petitioner has failed to carry. *See* § 2254(e)(1) ("[A] determination of a factual issue made by a state court shall be presumed

12

to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

**Severance**

First Petitioner asserts that APD Trager was ineffective in failing to move to sever the felony charges. According to Petitioner, the "uttering charges accored [sic] on the same day but approximately twenty minuts [sic] apart. And was extreamly [sic] prejudice because it made it extreamly [sic] difficult for the jury to unbiasly review the first uttering charge defense to give a fair determination of guilt or innoucense [sic] when presented a second uttering charge" (Dkt. 2 at 5).

In Count One of the Information, Petitioner was charged with cashing one of twelve checks that had been stolen from the LAMB office approximately 30 minutes before Petitioner presented it at the bank. In Count Two of the Information, Petitioner was charged with cashing another of the stolen checks approximately 20 minutes later. Both checks were cashed at a branch office of the Sun Trust Bank. These offenses were connected since the incidents involved the same victim and the acts occurred on the same date within 20 minutes. The charges were logically related by Petitioner's interest in an ongoing scheme to purposely deprive the victim of funds on deposit in the LAMB account.

The Court concludes that the decision not to move to sever the uttering charges did not have a substantial injurious effect or influence in determining of the jury's verdict. Petitioner fails to show how he was prejudiced by the prosecution of both charges in one proceeding. Contrary to Petitioner's speculation, if there had been separate trials, evidence of each uttering offense would have been admissible as similar fact evidence in the prosecution of the other charge. *See e.g., Fotopoulous v. State*, 608 So.2d 784, 790 (1992)

13

(even if there had been separate trials, evidence of each offense would have been admissible at the trial of the other to show common scheme and motive context out of which the criminal action occurred).

Under Florida law, courts may consider "the temporal and geographical association, the nature of the crimes, and the manner in which they were committed." *Id.* at 789. A defendant may, however, be "entitled to severance of properly joined related offenses upon showing that such is necessary to achieve fair determination of defendant's guilt or innocence of each offense." *Id.* at 790.

The determination of whether joinder of counts in a charging document is appropriate is solely a matter of prosecutorial discretion. *Bordenkircher v.* Hayes, 434 U.S. 357, 368 (1978); see *also United States v. Crespedes*, 151 F.3d 1329, 1332 (11ᵗʰ Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999). While a defendant may be "entitled to severance of properly joined related offenses upon showing that such is necessary to achieve fair determination of defendant's guilt or innocence of each offense," *id.* at 790, here, such is not the case.

A misjoinder "rises to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 (1986) ("Improper joinder does not, in itself, violate the Constitution."). In Petitioner's case, it is objectively reasonable to conclude that the single trial did not cause him any prejudice, and thus even if his single trial constituted a misjoinder, there was no constitutional due process violation. The Court has reviewed the record and the parties' arguments and, given the facts of the case, finds no basis for a constitutional claim on the issue of severance.

14

Having failed to demonstrate that severance of the properly joined offenses was necessary to promote a fair determination of his guilt or innocence, *see* Fla. R. Crim. P. 3.152(a)(2); *Johnson v. State*, 438 So.2d 774, 778 (Fla. 1983), *cert. denied*, 465 U.S. 1051 (Fla.1984), Petitioner has not shown counsel's performance to have been deficient or that if deficient, he was prejudiced by that performance, as required by the *Strickland* test. This claim lacks merit.

**Exculpatory Witnesses**

Petitioner complains that APD Trager was ineffective in failing to investigate and refusing to call available witnesses. Petitioner's theory of defense was that he did not know that the checks were stolen.  According to Petitioner, he informed APD Trager that:

> [H]is friend Michael introduced him to Roscoe, Lou C. Smith, and another party who in turne [sic] ask[ed] me if I would cash a check for him.  That this third party was an accountant for several companies and had authorization to write the check and any other finical [sic] transaction of these companies. And that this third party needed to balance some account enbalances [sic]. Do [sic] to a problem created by a prostitute who stole his identification and company account numbers. While in the Hillsborough County Jail[,] Petitioner comes in contact with two of the people who were present when Petitioner was told that [the] checks were authorized to be cashed (R. 221-23), Exh. 7-7A.  Lou C. Smith and A.K.A. Roscoe[ ] were inmates at the Hillsborough County Jail.  Who later explained to Petitioner, [sic] how this third party individual lied to get me to cash the checks.  This third party was called "Pop."

Dkt. 2 at 1.

Notably, while Petitioner complains that APD Trager was ineffective for failing to prepare for trial, the record reflects that in the weeks before Petitioner's trial was scheduled to commence, he instructed APD Trager not to inquire which of his cases was going to be heard on August 28, 2000, or take depositions of the State's witnesses because he wanted to assert lack of preparation by trial counsel as a basis for appeal. When Petitioner moved

to discharge APD Trager on August 21, 2000, he cited APD Trager's interview of the State's witnesses as grounds to discharge him because APD Trager had sabotaged his strategy for appeal. Following a *Nelson* hearing,[6] the court concluded that APD Trager was providing effective assistance and informed Petitioner that if he discharged APD Trager, he would have to proceed to trial *pro se* and there would not be a continuance.  Following a *Faretta* hearing, Petitioner was granted leave to represent himself at trial, with the public defender serving as "standby" counsel. Petitioner does not assert that there was a misapplication of the *Faretta* doctrine.

During the August 21, 2000 status hearing, APD Trager informed the trial court that he did not have addresses for either of the two witnesses Petitioner asserts APD Trager was ineffective in failing to investigate. Having heard Petitioner's complaints, the trial court concluded that APD Trager's pretrial preparation was not deficient.

Following the *Faretta* hearing, Petitioner requested a continuance, stating that he wanted to engage a handwriting expert to establish that the writing on the front of the check was not his and an investigator to locate the two witnesses who, Petitioner asserted, would testify that he did not know that the checks were stolen.  At that time, Petitioner informed the trial court that one of the witnesses, known only as "a/k/a Roscoe," was confined in the

---

[6] *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973). Under Florida law, when a defendant indicates to the trial judge prior to the commencement of the trial that he desires to discharge his court-appointed counsel, the trial judge, in order to protect the indigent's right to counsel, must make an inquiry of the defendant as to the reason for his request. If the court finds that a valid reason exists, it should so state on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense. If no valid reason appears, or the defendant did not state a reason, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the state may not be required to appoint a substitute. *See Hardwick v. State*, 521 So. 2d 1071 (Fla. 1988), habeas corpus denied, 648 So. 2d 100 (Fla. 1994), *reh'g denied*, (Jan. 17, 1995); *Matthews v. State*, 584 So. 2d 1105 (Fla.  2d DCA 1991); *Taylor v. State*, 557 So. 2d 138 (Fla.  1st DCA 1990) (disapproved of on other grounds by, *Heuss v. State*, 687 So. 2d 823 (Fla. 1996)). If after being so advised, the defendant continues to demand dismissal of his court-appointed counsel, the trial judge may in his discretion discharge counsel and require the defendant to proceed to trial without representation. *See Williams v. State*, 427 So. 2d 768 (Fla. 2d DCA 1983).

16

Hillsborough County Jail, and the other witness, the son of the person who allegedly gave Petitioner the checks to cash, could be located through the Hillsborough County probation office.

There is nothing in the record indicating that during the week following the trial court's finding that he was entitled to proceed *pro se*, Petitioner took any steps to locate either Mr. Smith or Roscoe, much less determine whether they were available to testify on his behalf. Further, as Petitioner acknowledged to the trial court during the *Nelson* hearing, although he and Roscoe were fellow inmates, he did not even know Roscoe's true name. Trial counsel is not ineffective for failing to locate an unidentified witness. *Jones v. State*, 528 So.2d 1171, 1174 (Fla.1988). Moreover, given that Mr. Smith, a probationer at the time Petitioner went to trial, was allegedly the son of the man who, Petitioner asserts, misled him regarding the origin of the checks, the Court is not convinced that Mr. Smith would have been willing to come forward and testify as Petitioner speculates and place himself at risk of being charged with conspiring in what Petitioner intended to argue was a criminal enterprise in which he was duped to participate.

In federal court, "complaints of uncalled witnesses are not favored[ ] because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978).[7] Under Florida law, trial counsel's failure to call a witness constitutes ineffective assistance of counsel only if the witness may have been able to cast doubt on the defendant's guilt. *See Pace v. State*, 750 So.2d 57 (Fla. 2d DCA 1999); *Marrow v. State*, 715 So.2d 1075, 1076 (Fla. 1st DCA 1998). In order to satisfy the prejudice

---

[7]Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

requirement, a facially sufficient habeas petition alleging ineffectiveness of counsel for failing to call certain witnesses must include an assertion that those witnesses would in fact have been available to testify at trial had trial counsel called them. *Nelson v. State*, 875 So.2d 579, 584 (Fla. 2004).

### *Williams* **Rule Evidence**

As to Petitioner's contention that APD Trager was ineffective in failing to move to exclude *Williams*[8] rule evidence, the State filed its Notice of Intent on August 4, 2000.  Under Fla. Stat. § 90.404(2), evidence of other crimes, wrongs, or acts is admissible when relevant as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity to engage in criminal activity.  Here, the State adduced testimony regarding a February 16, 2000 incident involving checks stolen from Advantage Motors and cashed by Petitioner. Testimony also established that on February 22, 2000, Petitioner presented a stolen check at a branch of NationsBank. The teller became suspicious and checked the records for the account. Noting that the check Petitioner presented was not within the sequences of checks recently presented on the account, the teller made an excuse to leave her window and approached her supervisor with her concerns.  When she returned to the window, Petitioner had disappeared, leaving behind his driver's license and social security card.

This evidence was properly presented to establish intent and negate any suggestion of mistake or accident in the Sun Trust transactions. *See* Fla. Stat. §90.404(2) (2000); *Williams v. State*, *supra,* at 659, 662 ("Our view of the proper rule simply is that relevant

---

[8]*Williams v. State*, 110 So.2d 654, 659 (Fla. 1959), *cert. denied*, 361 U.S. 847 (1959).

not be excluded merely because it relates to similar facts which point to the commission of separate crime. . . . evidence revealing other crimes is admissible if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried").

Acting *pro se*, Petitioner filed a motion to exclude the *Williams* Rule evidence. The motion was denied. Having had an opportunity to challenge the use of the evidence of the other uttering offenses, Petitioner cannot establish that he was prejudiced by APD Trager's failure to file a *Williams* Rule motion.

**Presence at Pretrial Proceeding**

Petitioner asserts that his right to effective assistance of counsel was violated when "trial stradigy [sic] was discused [sic] without the Petitioner being present on August 23, 2000. And trial court asked counsel, Tager's supervisor (Ms. Murphy) if she had the wax so Petitioner would slip" (Dkt. 2 at 2).

Petitioner misstates the record. Moreover, APD Trager was not present when the statement was made. The comment at issue arose in the following context during the August 23 status conference:

Nazaretian:  Judge, Robert Davis is set.

Court:  All right. That would be a good one. Are you ready?

Prosecutor:  Ready. Your Honor, I was going to request before we start these trials that we pick two juries.

Court:  Judge Padgett does not do that. He picks and goes. I'm not going to be available myself the next week or whatever. He won't do it any other way.

| | |
|---|---|
| Prosecutor: | I just thought that in the event of a mistrial, the advantage is – |
| Court: | First of all, I don't think he's going to take a *pro se* litigant.  I don't imagine Judge Padgett's going to try it.  So I'll let you know in a few minutes if he's going or not.  All right. |

(Whereupon the case was recalled at a later time)

| | |
|---|---|
| Court: | All right.  Back on the morning docket.  Robert Davis.  That's pro se.  And that's Ms. Burnett's case, correct? |
| Prosecutor: | Yes, Your Honor. |
| Court: | And Mr. Tager is on standby.  It's beginning to look like we're going to pick your jury because Ms. Corces is going to be busy.  Okay.  I think we'll pick the jury on one of Mr. Davis's case.  All right.  So page two through whatever, Robert Davis, leave him here.  We'll address him when we send the jury out in this case. |
| Prosecutor: | Your Honor, do you anticipate the trial starting today or tomorrow morning? |
| Court: | We'll pick the jury and do opening statements.  We'll need to let Mr. Tager – somebody let Mr. Tager know.  Ms. Murphy, you got the whole ball of wax now? |
| Murphy: | No.  I'll let Mr. Tager know to be down here at 3:00.  Excuse me, 2:30. |
| Court: | Okay.  Thank you. |

(Whereupon the case was recalled at a later time)

| | |
|---|---|
| Court: | On Mr. Davis, I'm going to set it over to Monday.  I'll bring out Mr. Davis and tell him that, though. |

(Whereupon the case was recalled at a later time)

| | |
|---|---|
| Court: | Mr. Davis, come up. |
| Petitioner: | I thought I was here as a witness. |
| Court: | No. No. You were brought over – I was trying to find out if we got the other case resolved or not.  So I brought you back today to see what happened with the other case.  It had been my intention if this case worked out to then start your trial. |

> We're still finishing up this other case with Mr. Dunlap, so we're not getting to you. I'm going to put you over to Monday morning and try and get you tried next week. We have jurors coming Monday and Wednesday. We don't have jurors coming Thursday and Friday. We're not going to have any jurors available. And next week is not a trial week. So I'm going to have to do you during my non-trial week.

Dkt. 5, Ex. 001 at R. 349.

The United States Supreme Court has held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). As the record reflects, Petitioner misreads the record in asserting that APD Trager was ineffective for discussing trial strategy. The discussion to which Petitioner directs the Court's attention was held without APD Trager being present and the discussion concerned the scheduling of the trial. There is nothing in the record that indicates that Petitioner's presence would have contributed to the fairness of the procedure. *Id*. The burden is on Petitioner to establish that he is entitled to habeas relief, and Petitioner has failed to met that burden.

The Court concludes that Petitioner has failed to show that the trial court's rejection of his ineffective assistance of counsel claims is contrary to, or an unreasonable application of, the *Strickland* standard or that the decision is based on an unreasonable determination of the facts in light of the evidence presented. Having failed to make the necessary showing, Petitioner is not entitled to § 2254 relief on Ground One.

**Ground Two**

In Ground Two, Petitioner contends that the trial court abused its discretion when it denied his request for a continuance. Petitioner presents the following argument in support of this claim:

21

> On August 21, 2000, Counsel Tager filed a defense witness list (Exh. 5A; 20-22). But made no attempt to contact witnesses because he didn't want to go to the county jail (Exh. 5B; 4-6). Petitioner terminated counsel and proceeded *pro se*. Petitioner was then denied an [sic] continuance to subpoena witnesses, file motions, obtain law library access and prepare for trial (Exh. 5E; 6-9), (Exh. 6).

Having been raised and rejected on direct appeal, this issue is properly exhausted.

As discussed, Petitioner conceded in his opening statement that the signatures on the checks in question were in fact his signatures. (Dkt. 5, Ex. 1, Vol. 2 Tr. 69). Petitioner argued that he needed to secure the services of an expert witness to establish that the writing on the front of the checks was not his (Dkt. 5, Ex. 1 at R. 308). Petitioner was charged with cashing forged checks, not forging the checks. Thus, there was no need for expert testimony regarding the handwriting on the front of the checks.

Petitioner contends that a continuance was necessary to allow him time to obtain the testimony of (1) Lou C. Smith and (2) "Roscoe" (Dkt. 5, Ex. 1, Vol. 2 at Tr. 221-224). Mr. Smith was the son of the man who allegedly gave Petitioner the checks to cash because he didn't have identification. *Id*. at Tr. 221-222. Roscoe was incarcerated with Petitioner, and according to Petitioner, he, too, was present when the checks were given to Petitioner. *Id*. at Tr. 222. Petitioner asserts that he could not have subpoenas issued for these putative potential witnesses because he could not locate them. The trial court denied Petitioner request for a continuance on August 21, 2000 (Dkt. 5, Ex. 1 at R. 340), and again mid-trial (Dkt. 5, Ex. 1, Vol. 2 at Tr. 224). As discussed above, despite having been warned that there would be no continuances granted (Dkt. 5, Ex. 1 at R. 331), Petitioner insisted on discharging APD Trager and proceeding *pro se*. In doing so, he accepted responsibility for trial preparation.

To the extent that the petition may be read to assert that Petitioner was denied the right to a reasonable opportunity to meet the charges by way of defense or mitigation and an adequate opportunity to call witnesses, resulting in a denial of due process, this claim lacks merit.  Citing *McKaskle v. Wiggins*, 465 U.S. 168 (1984), Petitioner contends that denial of his request for a continuance denied him "a fair chance to present his defense in his own way" (Dkt. 2 at 8).  As the Supreme Court pointed out in *McKaskle*,

> A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.

*Id.* at 174.

*McKaskle* does not support Petitioner's cause. In *McKaskle*, the defendant contended that his *Faretta* right to present his defense *pro se* was impaired by the distracting, intrusive, and unsolicited participation of counsel throughout the trial. Petitioner makes no such complaint. The record confirms that Petitioner was in fact accorded the right to conduct his defense in his own way. Petitioner filed and argued at least three *pro se* motions in pretrial proceedings. While standby counsel was available to assist Petitioner, he alone conducted the defense's *voir dire* of prospective jurors, made the opening statement for the defense to the jury, cross-examined the State's witnesses freely,  and registered his own objections. Petitioner does not assert that APD Trager prevented from calling any witnesses. Petitioner participated in the jury charge conference and approved the verdict form supplied to the jury and presented closing argument.  There is no indication that Petitioner was denied his right to present his defense "his own way" by standby counsel, the trial court, or otherwise.  Petitioner's cannot successfully complain that limits were placed on

23

his participation in the trial, for there clearly were none. As the *Faretta* court pointed out, "a State may -- even over objection by the accused -- appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." 422 U.S. at 834, n.46.

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). *See also  Van Poyck v. Florida Dep't of Corrs.*, 290 F.3d 1318, 1326 (11th Cir. 2002), *cert. denied*, *Van Poyck v. Moore*, 537 U.S. 1105 (2003). As the *Ungar* court opined, whether a denial of a continuance is so arbitrary as to violate due process "must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Unger*, 376 U.S. at 589.

Petitioner has not demonstrated that under the circumstances confronted by the trial court, denial of his request for a continuance was so arbitrary as to amount to a denial of due process. Petitioner requested leave to discharge APD Trager and proceed pro se seven days before trial was scheduled to commence and was advised before being granted leave to proceed *pro se* that the trial court would not entertain a request for a continuance of the trial. Petitioner has acknowledged on the record that he instructed APD Trager not to engage in discovery because he wanted to be able to assert on appeal that he was not allowed sufficient time to prepare for trial. Under Florida law, "[a] party may not invite error and then be heard to complain of that error on appeal." *Cox v. State*, 819 So.2d 705, 715 (Fla. 2002) (citing *Pope v. State*, 441 So.2d 1073, 1076 (Fla. 1983)). *See also Johnson v. United States*,

24

318 U.S. 189, 201 (1943) ("We cannot permit an accused to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him.") (quoting *United States v. Manton*, 107 F.2d 834, 848 (2d Cir. 1939)); *Diaz v. Secretary for the Dep't. Of Corrs.*, 362 F.3d 698, 702 n.4 (11th Cir. 2004).

Having failed to demonstrate that the state court's rejection of this claim is contrary to or an unreasonable application of United States Supreme Court precedent, Petitioner has not presented a viable claim for relief under § 2254(d)(1).

**Ground Three**

Next, Petitioner asserts that the trial court erred in denying his motion to exclude *Williams* rule evidence, denying him a fair trial. According to Petitioner:

> The state had a substantial case of evidence against Petitioner. The state also prejudice[d] Petitioner by joining two separate uttering offenses in the same information. But the state still sought to enter acts and alligations [sic] of a case that had not been tried into this case. And trial court allowed the state to present the prejudice acts over Petitioner's objection and filing of in limine.

As discussed, and as Petitioner acknowledges in his petition, the *Williams* rule evidence was presented to rebut Petitioner's defense by establishing intent and lack of mistake.

Respondent correctly contends that this issue is not cognizable in a federal habeas proceeding because it involves a matter of state law only. Trial court error as to the admission of evidence is a matter of state law and, therefore, generally not cognizable in a § 2254 proceeding. On habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Federal courts possess only limited authority to consider state evidentiary rulings in habeas corpus proceedings. *Burgett v. Texas*, 389 U.S. 109, 113-114 (1967). Even when

a petition that actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976)). Absent a constitutional violation, the Florida courts are the final arbiter of Florida evidentiary law. *See Mills v. Singletary,* 161 F.3d 1273, 1289 (11th Cir.1998), *cert. denied*, 528 U.S. 1082 (2000); *Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996) (per curiam); *Baxter v. Thomas,* 45 F.3d 1501, 1509 (11th Cir.), *cert. denied,* 516 U.S. 946 (1995).

Even if this claim was cognizable under § 2254, Petitioner would not be entitled to relief.  Petitioner, *pro se*, opposed introduction of evidence regarding other uttering charges arising from offenses which occurred on or near the date of the offense of conviction under the *Williams* Rule (Dkt. 5, Ex. 1, Vol. 1 at R. 18). The trial court explained the operation of the *Williams* Rule to Petitioner before hearing the State's proffer (Dkt. 5, Ex. 1, Vol. 1 at Tr. 6-7; Vol. 2 at Tr. 12-13).  The trial court then denied Petitioner's motion to exclude the *Williams* Rule evidence  (Dkt. 5, Ex. 1, Vol. 2 at Tr. 69).  As discussed above, Petitioner presented this claim on direct appeal. The state appellate court implicitly rejected his argument when it affirmed Petitioner's conviction.

When Petitioner addressed the jury during his opening statement, he stated "[w]hat you will not see presented today, that the State cannot present to you, is other facts and most important fact: that is, the [Petitioner] not having knowledge that the checks presented were actually illegal to present" (Dkt. 5, Ex. 1, Vol. 2 at Tr. 69).  Petitioner's declaration effectively invited *Williams* Rule evidence.

Before the State presented the *Williams* Rule evidence (Dkt. 5, Ex. 1, Vol. 3 at Tr. 199-218), the trial court instructed the jury:

> All right. Ladies and gentlemen of the jury, the evidence you are about to receive concerning evidence of another crime allegedly committed by the defendant will be considered by you for the limited purpose of proving intent and the absence of mistake or accident on the part of the defendant, and you shall consider this evidence only as it relates to those issues of intent and absence of mistake or accident.

(Dkt. 5, Ex. 1, Vol. 3 at Tr. 199-200).

Evidence of other crimes is generally admissible when such evidence tends to directly establish the requisite intent in the commission of a particular crime, or a common scheme or plan related to the crime for which the defendant is being tried. *Wingate v. Wainwright*, 464 F.2d 209, 211 (5th Cir. 1972). This is the rule in the federal courts, even where the defendant has not been convicted of the other crimes shown. *Id.* (citing *United States v. Perkins*, 444 F.2d 1329 (5th Cir. 1971). A similar rule is applied in the Florida courts.  The admission of the evidence did not violation Fla. Stat. § 90.404(2) (2000), which as discussed above, codifies *Williams v. State*, *supra*. His motion to exclude the *Williams* rule evidence was properly denied.

Petitioner has failed to establish that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  Having failed to make the necessary showing, Petitioner has not demonstrated that he is entitled to federal habeas relief on this claim.

**Ground Four**

In Ground Four of his petition, Petitioner contends that judicial bias resulted in the denial of his right to a fair trial.  Specifically, Petitioner argues that:

> The judge in this particular case was negatively influenced by Judge Cynthia
> Holloway and Assit. [sic] P.D. Sheri Murphy. And because of this trial court
> set out to deny Petitioner every constitutional right he could. The court lets
> me know hes [sic] bias (pg. 233; 17-23), (pg. 219). The court is rude (p. 219-
> 220). Helps the state introduce evidence (pg. 143-144). And also held [sic]
> the state present witnesses.

Dkt. 1 at 6. Having been raised and rejected on direct appeal, *see Davis v. State*, 827 So.2d

988 (Fla. 2d DCA 2002) (table decision), this claim is properly exhausted. Even though the

state court rejected Petitioner's claim without written opinion, the decision is entitled to the

same deference as if the court had entered written findings to support its decision. *See

Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245 (11th Cir. 2002), *cert. denied*, 538 U.S. 906

(2003). Thus, to prevail on his request for federal habeas relief, Petitioner must demonstrate

that the state court rejection of this claim resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States or constitutes an unreasonable determination of the

facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. §

2254(d).

The Due Process Clause of the Fourteenth Amendment guarantees criminal

defendants a right to a fair and an impartial judge who is neutral, detached and free from

"actual bias." *In re Murchison*, 349 U.S. 133, 136 (1955); *see also Bracy v. Gramley*, 520

U.S. 899, 905-06 (1997). A petitioner challenging his conviction based on a due process

claim of judicial bias or prejudice must, however, show that the judge was actually biased or

prejudiced against the defendant. *See Nichols v. Sullivan*, 867 F.2d 1250, 1254 (10th Cir.

1989); *Dyas v. Lockhart*, 705 F.2d 993, 996 (8th Cir. 1983). The bias must stem from

personal or extrajudicial sources and not from information learned during judicial

proceedings. *See Wiley v. Wainwright*, 793 F.2d 1190, 1193 (11th Cir.1986).

It is well-established under both Florida and Federal law that adverse judicial rulings are not a proper basis for finding that an otherwise valid conviction should be reversed based on a claim of judicial bias. *See Suarez v. State*, 95 Fla. 42, 115 So. 519 (Fla. 1928); *Hope v. State*, 449 So.2d 1315 (Fla. 2d DCA 1984). *See also Christo v. Padgett*, 223 F.3d 1324, 1334 (11th Cir. 2000) (quoting *Hamm v. Members of the Bd. of Regents*, 708 F.2d 647, 651 (11th Cir. 1983) ("Neither a trial judge's comments on the lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias.").

Petitioner's assertion that after being informed by the judge presiding over an unrelated prosecution that Petitioner "was a disruptive person," the trial judge made "an unusual efford [sic] to deny [Petitioner] every basic fundamental right" (Dkt. 8 at 11) is vague and conclusory. Devoid of any factual support, this assertion is insufficient to support finding that the trial court judge harbored "actual bias or prejudice" toward Petitioner. Nothing in the record supports Petitioner's claim that the trial court judge was biased or that he otherwise prevented Petitioner from receiving a fair trial. As Petitioner acknowledges, "this statement of what [the] trial court was told [by Judge Holloway] does not mean the [trial] court could not be impartial" (Dkt. 8 at 11).  The mere fact that the trial court carried out its statutory and legal obligations in a manner not preferred by the defendant does not mean that the judge is biased against him. It certainly does not mean that the judge harbors an aversion or hostility to the defense or the defendant, nor does it reflect a state of mind "so resistant to a fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings." *Liteky v. United States*, 510 U.S. 540, 557-58 (1994). Petitioner's claim does not

rise to the level of a due process violation because there is no evidence of actual or inherent judicial bias.

Petitioner has failed to establish that the state court's rejection of this claim was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). This ground, therefore, lacks merit.

**Grounds Five**

In Ground Five of his petition, Petitioner asserts that he was denied a fair trial because the jury panel was not "properly sworn" to tell the truth during voir dire, contending that the "court when swearing in the jury did not hold the jury panel to be truthful. But only directed the panel to give a true answer" (Dkt. 2 at 13). Petitioner further states that "the jury and witnesses picked up on this, and did not 'tell the truth' on all questioning."

When Petitioner raised Ground Five on direct appeal, the State argued that the procedural default rule barred consideration of this issue on the merits because Petitioner never objected to the form or content of any oath administered in his trial. The State relied on the holding in *Murphy v. State* to support its argument. 667 So.2d 373, 374 (Fla. 1st DCA 1995) (citing *Beausoliel v. United States*, 107 F.2d 292, 294 (D.C. Cir. 1939)). *See also United States v. Perez*, 651 F.2d 268, 273 (5th Cir. 1981).

As the transcript confirms, the venire panel was properly sworn prior to questioning:

Court:      First thing we need to do is swear you in as prospective jurors in this case. Will you please stand. Madam Clerk.

Clerk:      Do each of you solemnly swear or affirm that you will a true answer make to all questions propounded to you by this Court or this Court's authority touching upon your qualifications to serge as a juror in this court, so help you God?

Panel:          Answered in the affirmative.

Dkt. 5, Ex. 1, Vol. 2 at Tr. 21. The record reflects that each witness was likewise properly sworn. Moreover, Petitioner acknowledges that he did not object to the oath administered to the venire panel, the jury, or any witness during the trial. Petitioner has advanced no explanation for the failure to object, as required under Florida's "contemporaneous objection" rule. *See Fraterrigo v. State*, 151 Fla. 634, 638-39 (Fla. 1942). Under both Florida and Federal law, where matters complained of were not preserved in the trial court, counsel is procedurally barred from raising them on direct appeal. *Jackson v. Singletary*, 931 F.2d 712 (11th Cir. 1991), *cert. denied*, 502 U.S. 973 (1991); *Porter v. Crosby*, 840 So.2d 981, 986 (Fla. 2003).

In the present case, the state district court affirmed Petitioner's convictions without written opinion. In its appellate brief, the State argued that Petitioner's claim was procedurally defaulted under the "contemporaneous objection" rule. Even though the state appellate court entered its decision implicitly rejecting this claim without written opinion, the decision is entitled to the same deference as if the appellate court had entered written findings to support its decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245 (11th Cir. 2002), *cert. denied*, 538 U.S. 906 (2003).

Under these circumstances, it must be presumed that the state appellate court relied upon the procedural bar. "When a state court issues a summary denial on a claim that is procedurally barred and nothing in the disposition discusses the merits of the federal claim, we 'cannot assume that had the [state court] explained its reasoning, it would have reached the merits of [the] claim.'" *Zeigler v. Crosby*, 345 F.3d 1300,1310 (11th Cir. 2003), *cert. denied*, 543 U.S. 842 (2004) (quoting *Kight v. Singletary*, 50 F.3d 1539 (11th Cir. 1995), *cert.*

31

*denied*, 516 U.S. 1077 (1996)[9] (citing *Tower v. Phillips*, 7 F.3d 206 (11th Cir.1993))).

The Eleventh Circuit has held that where, as here, a claim has been exhausted in state court and is procedurally barred because Petitioner failed to raise it during trial or on appeal, these issues are procedurally defaulted in a federal habeas court unless Petitioner shows cause or prejudice excusing the default or that he is "actually innocent." *See Chandler v. Moore*, 240 F.3d 907 (11th Cir. 2001). *See also Stewart v. LaGrand,* 526 U.S. 115 (1999). In recognition of "the important interest in finality served by state procedural rules, and the significant harm to the states that results from the failure of federal courts to respect them," federal habeas courts will only entertain a claim that is procedurally barred in state court if the petitioner demonstrates cause for the default and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750. Otherwise, the claim is procedurally defaulted in this Court. *Id.* at 735 n.1. Cause must ordinarily be something external to the petitioner -- something that cannot fairly be attributed to him. *Marek v. Singletary,* 62 F.3d 1295, 1302 (11th Cir.1995). To satisfy the prejudice requirement, Petitioner must show "actual" prejudice as a result of the alleged violation of federal law. *United States v. Frady,* 456 U.S. 152 (1982).

Petitioner cannot argue that the cause for his procedural default was ineffective assistance of trial counsel for failure to object to the administration of the oath because he represented himself at trial. Petitioner offers no other excuse for his failure to raise this claim on appeal, and the Court discerns none that would amount to good cause to overcome his procedural default. Having failed to allege, much less show, that any factors external to the

---

[9]In *Kight v. Singletary*, 50 F.3d 1539 (11th Cir.1995), *cert. denied*, 516 U.S. 1077 (1996) ("Where, as here, a clearly meritorious claim is procedurally barred and the state court denies relief without opinion, 'the most reasonable assumption is that . . . the state court ... enforce the procedural bar.' ").

defense prevented the presentation of this claim on appeal, Petitioner has not shown cause to excuse the default. *See Murray v. Carrier,* 477 U.S. 478 (1986).

An exception to the "cause-and-prejudice" requirement was recognized in *Wainwright v. Sykes*, 433 U.S. 72 (1977), when the Court stated that the standard developed there would not bar habeas relief for a victim of a "miscarriage of justice." *Id.* at 90. Absent a showing of cause and prejudice, a petitioner in a collateral proceeding who wishes to avoid a procedural bar to consideration of the merits of his underlying claim must "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quotations omitted); *see also Schulp v. Delo*, 513 U.S. 298, 316 (1995) (citations omitted). Because Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, *supra*, the merits of Ground Five will not be addressed. *See Kight v. Singletary*, *supra*.

**Ground Six**

Finally, Petitioner asserts that after he "terminated his counsel and proceeded *pro se* because Counsel Tager refused to subpoena witnesses, file motions and prepair [sic] for trial[,] Petitioner filed a motion to have the court notify the Hillsborough County Jail that *Petitioner is pro se, and elligable [sic] for more than one hour of law library access per week.* Trial court refuse[d] to notify the county jail of such" (Dkt. 2 at 17-18). This claim was raised in Ground Five in Petitioner's Rule 3.850 motion: "trial court denied the defendant constitutional "access to the Courts" when it declined to notify the county jail that defendant was *pro se* (Dkt. 5, Ex. 010). In addressing the claim, the trial court found:

33

> Grounds 5, 6, and 7, of Defendant's Motion can be addressed *simultaneously as each of these grounds allege various instances of trial* court errors. However, these claims are procedurally barred from post-conviction proceedings as they could have been raised on direct appeal. *See Harvey v. Dugger*, 656 So.2d 1253 (Fla. 1995). As such, no relief is warranted on these grounds.

Dkt. 5, Ex. 011 at 2.

The record confirms the trial court's finding that this claim is procedurally barred under the rules governing post-conviction relief in Florida courts. *See* Fla. R. Crim.P. 3.850(c).[10]

When Petitioner appeared before the trial court on August 21, 2000, he presented a written motion asking the trial court to direct the jail to afford him access to the law library. The trial court granted the motion consistent with the jail's policy on library access. Petitioner also presented a written motion to terminate APD Trager. After Petitioner had been told that he could proceed *pro se*, the trial court advised Petitioner that in its opinion it was a "mistake for somebody to represent themselves. But I think you know what you're doing and you've made that decision to represent yourself. And I will permit you to represent yourself" (Dkt. (Dkt. 5, Ex. 1 at R. 338-39). After the trial court granted Petitioner's request to proceed *pro se* and instructed Trager to serve as standby counsel, the following exchange occurred:

| | |
|---|---|
| Petitioner: | Can I say something? I did request a few motions verbally. |
| Court: | Hold on one second. Ms. Richy, you got a moment? |
| | (Pause) |
| Court: | All right. What other motions are pending, sir? |

---

[10]Under Fla. R. Crim. P. 3.850(c), "grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal" are procedurally barred from collateral review.

| | |
|---|---|
| Petitioner: | Well I didn't get a chance to write it out. But as far as -- |
| Court: | Put it in writing and I'll be more than happy to hear it, sir. |
| Petitioner: | Since you won't hear it this time -- |
| Court: | I'll be more than happy to hear it when you write it. |
| Petitioner: | I have to – I would have to – I would have to move the court for a continuance – |
| Court: | Denied. |
| Petitioner: | – since -- |
| Court | I just told you five minutes ago I am not going to grant you a continuance. Do you understand that? |
| Petitioner: | Why not? I mean I'm taking on the case and not him. |
| Court: | That's your choice. |
| Petitioner: | I'm not worrying about you forcing me going to trial. |
| Court: | I'm not forcing you to go to trial. |
| Petitioner: | Yes, Your Honor. |
| Court: | I'm giving you an option of having him represent you or not. |
| Petitioner: | Let's go. |

*Id*. The record reflects that one of the oral motions Petitioner referenced was a request for use of the law library. Petitioner proceeded to trial on August 28, 2000, without having presented written motions. Under the procedural rules governing criminal proceedings in Florida courts, "[e]very pretrial motion and pleading in response to a motion shall be in writing and signed by the party making the motion or the attorney for the party." Fla. R. Crim. P.

Rule 3.190(a). Having previously presented a written motion for access to the jail's law library and to discharge trial counsel, Petitioner cannot now successfully assert that any limitation placed on his access to legal materials prevented him from presenting written motions.

Respondent argues that this claim is procedurally barred because it was not preserved at trial, *see* Fla. Stat. § 924.051(1) (b) (2000). The record reflects that prior to granting Petitioner leave to proceed *pro se*, the trial court granted his motion for access to the law library, qualified by instructing that he would receive access consistent with the jail's policy on the use of the law library. After Petitioner was granted leave to proceed *pro se*, he complained to the trial court that the jail had not complied with its order. The trial court instructed the clerk to contact jail personnel and find out whether they had received a copy of the trial court's order. Petitioner did not, however, present a written motion for access to the law library after he was granted leave to proceed *pro se*, as instructed by the trial court. Respondent further contends that had Petitioner preserved this claim for review, he could have litigated it on appeal; however, he abandoned the claim by not raising it in his direct appeal. *See Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001) ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion").

A review of the record confirms that Petitioner did not preserve this issue for appeal. Therefore, for this Court to reach the merits of Ground Six, Petitioner must demonstrate cause for the procedural default and actual prejudice, or demonstrate that the constitutional violation has probably resulted in conviction of an innocent person. *Coleman v. Thompson*, 501 U.S. at 750. *See* discussion *supra* at 32. Because Petitioner has not met this burden, the merits of this claim will not be addressed. *See Hill v. Jones,supra*; *Kight v. Singletary*, *supra*.

36

## Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus, as supplemented, *see* Dkt. 16, is **DENIED**. Dkt. 1.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**ORDERED** in Tampa, Florida, on *September 27th*, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copy to: All Parties of Record
SA:jsh

37